Good morning ladies and gentlemen. We have four cases on the calendar this morning. Three patent cases and a government employee case. Government employee case submitted on the calendar. This is the ITC. And the number is 2007-13-91. Mr. Stein. Good morning. I'm Ken Stein with General Block for Appellant Settlement Technologies. We're here because we believe that the ITC made fundamental errors of claim construction making this decision wrong. There are numerous examples of those errors identified in our briefs, but today I'd like to focus on just two where the results of those errors were particularly striking. But before getting to those two examples, I'd like to address Toyota's argument that the issues here don't turn on claim construction, particularly with respect to the power conversion means limitation. Toyota asserts that the parties had agreed on the construction of that term. There are, however, two problems with Toyota's assertion. The first problem is that the parties agreed what structure in the specification corresponded to the power conversion means. They did not agree that doing so would render numerous other claim limitations superfluous, including the envelope limitation and the integral combination limitation, which are two of the important limitations at issue here. Stein, I'd like to ask you about enablement. The patent was held invalid for lack of enablement of the full range of speeds with respect to peak power. Where is there enablement in the patent with respect to the full range? Well, the claim at issue here, claim seven, does not require peak power at all speeds under what we believe the correct claim construction. So the basis for the enablement decision would fall with a corrected claim construction. What if we disagreed with you on that point? If you disagree, then I think that the ITC's decision would stand on that issue. Please proceed. So give us your best argument that you don't have to have peak power through all speeds. Well, as the ITC acknowledged, power and speed are two completely distinct components. And it was just improper for the ITC to graft the peak power requirement onto that particular limitation. In fact, the claim limitation itself recites, let me get it right here, that the claim language itself says only that the rotational speed of the output is continuously variable. It doesn't say anything at all about the power. Well, the summary of the invention says, an object of the invention, to deliver peak power output over a very large range of the rotational speed. And I think, wasn't there an argument made in the prosecution distinguishing the prior art Rho? Would it be the same thing? No. Rho was not distinguished on the basis of a peak power requirement. Rho was distinguished on the basis of the configuration of the electric motor and the transmission elements. In fact, there is no discussion at all in the file history of the peak power requirement. And that's one of the reasons why we believe that the peak power requirement should not be part of the claim. Well, as I read the prosecution history, you did make a distinction over Rho based on the continuously variable rotational output speeds. Why isn't that a distinction that Judge Lucker properly seized upon? Because, again, the fact that the output speeds are continuously variable has nothing to do with whether or not those output speeds are being produced at peak power. While the inventor did describe that one of the objects of the invention was to produce a device that operates at peak power, that object was not incorporated into Claim 7. I have a hard time understanding exactly how restrictive, if restrictive at all, your construction of continuously variable is and why it wouldn't, if I understand it correctly, would read on just, let's say, an engine with a system with one gear. Well, one thing I would say is that the notion that the... Well, let me get right to that. You know, you need the continuously... What do you say the term rotational speed of set output is continuously variable means? It wouldn't read on anything. Well, we proposed a construction which was that it's a variation of speed from some lower value to a higher value, large enough so that in the prior art you would maybe be, well, shifting gears. But the main point is that in a continuously variable transmission, and I don't think that Toyota disputes this, you're decoupling the speed of the motor from the speed of the output of the transmission. And that's the key sort of characteristic of the continuously variable transmission. Well, but your definition of the plain language, if I understood it correctly, why wouldn't it read on simply a vehicle that has one gear? You would have... Yeah. Well, go ahead. Well, the idea behind the continuously variable transmission is that you can exceed, you can shift beyond what the limits of that gear are, and you're not limited to the multi-gear system where you're locked in to a specific ratio between the input speed and the output speed. Well, I understand that's the object of a continuous variable transmission, but it doesn't seem to me, given the specific language you've used here and the way you propose to construe it, that it requires any more than a one-to-one ratio between the speed of the motor and the speed of the wheels. Or any other ratio, fixed ratio. Because you're going to have a continuous range of speeds between the low speed, so let's say stopped, and the highest speed that the motor can produce. I think that the... I understand your point. I think that the idea was in distinguishing the types of systems that had the multiple gears. I mean, if the range is small enough so that it operates within one, you know, the range of speeds is within one gear, I take your point that you are continuously varying it within that one gear. But the idea was that you're decoupling the input to the output. If that's not captured in our proposal, I think that's why I was talking about a substantial range of values instead of just a narrow range. If it's not captured in here, it's equally not captured in what the ITC did. Okay. Did your own expert make a concession that continuously variable was synonymous with infinite speed as applied to transmissions? He did not. He said several times, several different times, and I cited them in the reply brief, that basically the two concepts are different and decoupled and it would not make sense to have a peak power requirement as a requirement of the continuously variable output speed. But I think more importantly, just focusing on the claim, the claim talks about a continuously variable output speed. It uses the word speed right in the claim. It's not talking about power, and the ALJ conceded that speed and power are distinct concepts. But doesn't the specification in several places talk about peak power at the total range of speeds? The specification does, but it was not... But that's what the invention is. It's not what the invention is because that's not what the claim recites and it's not what the claim requires, and it was not necessary to distinguish the prior art on that basis. Do you want to shift gears and save the rest of your time? Okay. I'll continue. You looked like you were about to... Yes, I was about to talk about the power conversion means. Going back, Toyota asserted that the parties had agreed on the construction of that term, but there were two problems with it. One was that the parties agreed with the corresponding structure of the power conversion mean was, but didn't agree that that limitation would basically wipe out all the significant other limitations in the claim. The second problem is that we thought that the ITC would consider the structure as a whole as it was required to do under Odetics, not perform an improper parsing of the overall structure on a component-by-component basis. It's actually hard to imagine a clear example of an improper component-by-component analysis. The ALJ started his analysis by stating his conclusion that the power conversion means limitation was not met because of differences between a particular structure, a particular component in the patented structure and a particular component in Toyota's products, a particular disc 23 and 33 in the patent, and a shaft in Toyota's products, and then went on to describe those differences. Once the structures in the patent and accused products are properly treated as a whole, there can be no question that Toyota's products infringe. There are three fundamental aspects of that overall structure. It contains two electric motors connected to a planetary gear set. Those fundamental aspects are present both in the patented structure and in Toyota's. I see I'm running way down on my rebuttal time, I believe. So I think I should stop now and save a little bit of time. We will save it for you. Mr. Jardine, is it? Jardine. Jardine, sorry. I was putting the time with Mr. Donner. That's correct. Sort of a hybrid argument. Right, exactly. May it please the court, the commission in this case determined that there was no violation of Section 337. Accordingly, the affirmance by the court on any one of the several commission findings in this case would also affirm the determination of no violation, particularly affirmance by the court on any one of the commission claim constructions would affirm this ultimate determination of no violation. Tell us about the peak power. Yes, regarding the peak power, particularly the court can look to the relevant prosecution history pages, A309, and here clear, distinguishing, unmistakable disclaimer statements were made to substantially narrow the scope of this term so that it was properly construed in order to distinguish the prior art. Mr. Stein just told us a minute ago that if we adopt the claim construction of Judge Luckern, that the claim is invalid for lack of enablement, why wouldn't we perhaps take that into consideration and restructure the claim construction so as to preserve the validity of the claim? See it as perhaps not requiring absolute peak power over all of the variable speeds, perhaps backing off, finding some mid-ground that would preserve validity. Well, in accordance with this court's precedent, unambiguous prosecution history disclaimer may compel invalidity determination, and here the prosecution history is not only a... We can just, once again, taking Mr. Stein's argument, if we just look at that claim language, the language limits itself to speed, there's some statements in the specification which we might not import into that claim. Why wouldn't we perhaps consider restructuring it to preserve validity again? Again, in view of the entirety of the intrinsic record, the claim language cannot be divorced from the specification, the prosecution history, especially in this case. I mean, on two occasions in the prosecution history, the patent expressly defined continuously variable as an infinite speed transmission device, and if you go to the specification, particularly if you go to pages A-229, columns 15 through 25, or A-231, lines 34 through 36, it expressly discloses that, expressly defines infinite speed transmission device as delivering peak power over any desired output speed. So I think the clear language of the prosecution history disclaimer together with the specification clearly delimits what is continuously variable as delivering peak power over any desired rotational output speed. The ALJ premised his holding of lack of enablement in part, a significant part, on the testimony of Dr. Davis, who said it would provide the flexibility to allow the input source to operate at a peak at which could provide peak power output over a large range of speeds of the output, but not all, certainly not. Those seem to have been the last few words that the ALJ grabbed hold of. Isn't that sort of a weak read in which to invalidate a patent? Because the testimony was it could provide peak power output over a large range of speeds. It's basically a positive statement. I think it's consistent with the words chosen by the patentee in the prosecution history as well as the specification that an infinite speed transmission device is a device that outputs peak power over any desired range of the output speed from the full negative maximum value to a positive maximum value. In the summary of the invention, it wasn't over any speed but a very large range. Presumably, there would be some restriction on the scope of the range. No, it's a large range but not the entire range that the engine is capable of producing. Basically, the specification exposes any desired speed, so it is consistent from a negative maximum value to a positive maximum value as described in column four, lines 20 through 24. So any desired speed along this continuum of negative maximum value to positive maximum value has to be output at peak power in accordance with the full intrinsic record, especially the prosecution history language used. But again, the language in reading from column two, lines 54 to 56, says it can deliver peak power output with continuously variable speed of rotation over a very large range of the rotational speed of the output, which means less than all the range of rotational speed of the output, as I read it. Isn't that basically what Dr. Davis said? To a large extent, but again, other parts of the specification do say any desired speed, so any desired speed that's output needs to be at peak power in accordance with, again, if you look at the title itself, at the abstract, again, with the language, column one, lines 15 through 25. Again, on page 231, column five, lines 34, where again it says... Again, column one repeats the over a large range of rotational speed, rather than at all. All right. So again, the public notice function of the prosecution history would not be served if, again, the clear, unmistakable, unambiguous language of the prosecution history was not followed in this case. And also to address one point made by Solomon's counsel, I think it's taken out of context that the ALJ acknowledged that speed and power are distinct concepts. It's a quote from ID at A44. The exact quote is, while speed and power are generally two distinct components that do not necessarily have a relational connection, the patentee has linked the requirement of continuously variable rotational speed of the output with the requirement of peak power for each speed in the range of rotational speed, both in the specification and prosecution history. So the ALJ acknowledged that prosecution history tied these two when maybe distinct concepts together, speed and power, have to be combined as one for continuously variable to be met. I see my time is running short. There's no further questions. Only further time for the interviewer's counsel. Again, I just want to reiterate, the commission made several findings in this case and affirmed by the court in one of these findings, would affirm guilt with determination of no violation. Thank you. Thank you, Mr. Chair Dodd. Mr. Dodd. Good morning and may it please the court. Since the court is interested in peak power, I'd like to talk about peak power. Not only is the prosecution history replete with references to peak power, but the specification mentions peak power in almost every column and probably the best place to look is in column two, the summary of the invention. The very first object says an object of the invention is to provide an infinite speed combination. And I'll stop there. Davis, the expert for Solomon, admitted that infinite speed is equivalent to variable speed. And so every time in the prosecution history you see a reference to infinite speed, it means variable speed and it goes on. A combination motor and transmission device, namely, meaning he's defining what an infinite speed means, namely, which can deliver peak power output with a continuously variable speed of rotation over a very large range of the rotational speed of the output. Now Judge Bryson asked, where does it say over a very large range means throughout the entire range. I think the answer to that is in column five. If you look at column five, lines 34 through 38, it says, as is explained in the following, the combination motor and transmission device can provide full power, that's peak power, to the wheel 10 while rotating it at any speed in this large range. Any speed in this large range. This being an effective and efficient infinite speed transmission device. Is that just an embodiment? Pardon? Is that just an embodiment? That's a description of a preferred embodiment. Back when you're discussing the entire invention in the summary of invention, it says very large. The embodiment, of course, one embodiment may indeed be over the entire range. Why can't the invention be something slightly different or broader than that embodiment? Your Honor, I guess theoretically it could be, but everything in this specification, everything in the prosecution history, talks about peak power and relates it to the range of variable speeds. And I think to suggest that that statement applies only to a specific embodiment is not compatible with all the other references relating peak power to the variable speed and the infinite speed. Well, if there isn't enablement at peak power over the total range of speeds, where is the enablement over some range of speeds? In other words, less than total. Where is the enablement portion in the specification?  Over some portion of the range. I can't point to anything specific, but it is undisputed that peak power does not apply to the full range. I cannot answer your question as to where is it enabled as to even a portion. And I'd like to segue into Judge Rader's point from that point, and that is... In other words, the enablement, the invalidity for lack of enablement only is correct with respect, if we adopt that claim interpretation. I'm prepared to accept that, Your Honor. Now, as to Judge Rader's question of why shouldn't we construe the claims to preserve validity, Mr. Jardine is correct. The case law of this court makes it clear that that route should only be followed  I don't think this claim is ambiguous. Peak power is tied continuously through the spec, through the prosecution history, into the continuously variable limitation. Now, let me talk very briefly... The claim isn't ambiguous. The claim doesn't say anything about peak power. Your Honor, it doesn't. You read it in. It doesn't say it, but the applicant has defined it in the specification. The language in the first paragraph under summary of the invention is a definition of infinite speed, and Davis, the expert for Solomon, has acknowledged, there's no dispute about this, infinite speed equals continuously variable. Now, as to the power conversion means, I don't have much time, but I would like to briefly talk about that. There are several points here. One is that Judge Luckern did not import limitations into the claim. He did not change the agreed-upon claim construction. Everybody agrees that power conversion means is a means plus function clause subject to section 112, paragraph 6, and everybody agrees on what the function is, and everybody agrees on what the corresponding structure is. All that Judge Luckern did was he interpreted, he looked at the corresponding structure, and he found a number of elements. He looked first at the combination as a whole. He acknowledged the court's case law that says you can't do it on an element-by-element basis, but then he relied on case law that says if there's a central point in the invention, you can look at that central point, and what is clear from the prosecution history and the specification is that Mr. Edwards, the inventor of this case, wanted to avoid shafts. He wanted to avoid weight. He wanted to avoid a lot of parts, and so he used a disk structure, and everybody agrees that a disk structure, 23 is its number, is part of every embodiment, the corresponding structure, and so what Judge Luckern did is to say, well, let's look at that structure, and is it an equivalent? Everybody agreed it didn't literally match the accused device, and he found that there was a disclaimer. There was an estoppel applying to the shaft and to the number of bearings, and he said that the Toyota devices use a shaft, and therefore that's a problem. It has plural bearings. That's a problem. That was dedicated. There is an estoppel as to those, and therefore I submit that his construction should be affirmed. I see I have 27 seconds left, but I don't need to use all my time. If you have any questions, I'll be glad to answer them. Otherwise, I will relinquish those 20 seconds to the court. Thank you. We'll take a 16-second break. Mr. Stein, you have some rebuttal time. Thank you. One of the gentlemen mentioned that there was an unambiguous prosecution disclaimer regarding the peak power limitation. That's just completely wrong. There was no mention of peak power at all in the prosecution history. The only thing that was mentioned in the prosecution history that they tried to link to the peak power was references to an infinite speed transmission device. That does not give rise to the level of prosecution disclaimer. Prosecution disclaimer has to be clear and unambiguous, and the patentee did not argue for the patentability of the claims based on peak power. These references where they used to link to something else in the spec just do not rise to that level. Toyota's counsel mentioned that the patent admittedly talks about one of the objects of the invention being to provide peak power, but this court has held on many occasions that objectives of the invention should not be read into the claims, and there just is no claim limitation to link that objective to. The opposing counsel linked the requirement, said the specification links the requirement of speed and power, yet when you look at the statements in the specification, it's quite clear that it's talking about providing peak power at continuously variable speeds of rotation. None of the sentences make sense if peak power is part of the definition of what continuously variable is. I'm not sure that's stated only as a purpose. I look at column 8, line beginning 4. As is easily understood, this total peak power output of the transmission device of the present invention is available at any output speed. That's a pretty firm statement. Does peak power? Any output speed? Well, it does mention earlier in the specification that it is one of the objects of the invention, and once again, there's just no claim language to link that particular statement to continuously variable speeds that is distinct from the provision of peak power. Super. In talking about, you know, what the range of continuously variable speeds were, Toyota's counsel mentioned that it had to be from full forward. I believe he said that it needed to be from full forward to full reverse. That was an issue that was addressed before the ITC. The ITC rejected a range characterized in that way. Oh, I see I'm out of time. Thank you. I didn't want to take up your argument time, but just so I understand, this concept of peak power is a little elusive to me. So, if I have a vehicle with three gears, and I run through the gears one at a time, each gear has one point at which it's producing what we'll call, I'm not sure it is, I want you to tell me, peak power, at least it's operating at its most efficient speed. The output is, at a particular speed, the maximum efficient output for that gear. As you change gears, you go through a period between the two gears, going from first to second gear, in which you're not getting the maximum power or efficiency of the engine. You go back into another gear, and so forth and so on, as you go up the gears. And the more gears you have, the more opportunities for maximum efficiency of the engine to be exploited as you go from gear to gear. And as I understand it, the idea of continuously variable transmission is in effect, you have an infinite number of gears. Now, is my characterization of the difference between a three-geared vehicle and an infinite, continuously variable transmission correct? And is my concept of peak power consistent with yours? I think it's a little bit more limited. I think, I believe that many motors don't have a... I may not have done it as well as you could, but if you can help me. When you talk about peak power, it's not always a single point. Sometimes there's a range of values depending on the motor. If you look at a power curve, sometimes it tops out. In electric motors, the power curve is different. It may have a peak power range that's broad. It's not just a single point. You're correct about going through individual gears. The idea behind the continuously variable transmission is that you could set up, you know, have the motors running in that peak power range. And then, you know, by varying them, the speed of the motor within that range, you can vary the output of the transmission in a much broader range. With the output, you will vary the output while maintaining a consistent level of performance, at least. Right, that's the idea. So if I had 40 gears, I had the ultimate gearbox, then I would approach performance of a continuously variable transmission, correct? I think you might, shifting through the gears at the right point. Right, right. But that point would be the point at which each of those gears would be optimally functioning. Now, would you say that at that point, it's achieving peak power performance? Or are we talking about something different from that, when we're talking about what my 40-gear vehicle could achieve at each of the optimal points of each of the gears? Well, you know, the peak power refers to the power that the motor or engine is running at. I understand. So if you're running, if you have a particular gear engaged and you're at the speeds you want to be, you know, the output of the transmission is at the speed that's desired, then you're operating, you know, for that speed at peak power. Maybe I'm not following that. Thank you. Okay. Thank you, Mr. Stein. We'll take the case under advisement.